UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KELLY VICKERS,<br><br>          Plaintiff,<br><br>    v.<br><br>ALLBIRDS, INC.,<br><br>          Defendant. | Case No.  26-cv-00861-RFL<br><br>**ORDER GRANTING MOTION<br>TO COMPEL ARBITRATION<br>AND STAYING CASE**<br><br>Re: Dkt. No. 15 |

Plaintiff Kelly Vickers brings this putative class action against Defendant Allbirds, Inc., alleging that trackers on Allbirds's website surreptitiously intercepted customers' personally identifiable information and product purchase information, and disclosed this information to third parties such as Google and Meta.  (Dkt. No. 1.)  Allbirds moves to compel arbitration pursuant to a mandatory arbitration provision in its Terms of Service.  (Dkt. No. 15.)  For the reasons that follow, the motion is **GRANTED**.  This order assumes the parties' familiarity with the facts of the case, the applicable legal standards, and both sides' arguments.

Vickers does not dispute that the arbitration provision encompasses her claims against Allbirds.  (Dkt. No. 17 at 8 n.1; Dkt. No. 18 at 9.)[1]  Instead, she argues that no valid agreement to arbitrate exists.  *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).  Vickers offers two principal arguments: (1) Allbirds failed to provide reasonably conspicuous notice of

---

[1] All references to page numbers for filings on the docket refer to ECF pagination.

1

its Terms of Service, and (2) she did not unambiguously manifest assent to the Terms of Service. (Dkt. No. 17 at 10–17.)  Both arguments are unavailing.

First, Allbirds's checkout page is designed such that a reasonably prudent user would have seen the Terms of Service.  It therefore provides reasonably conspicuous notice capable of giving rise to a sign-in wrap contract.  *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025).  Below is Allbirds's checkout page:



As the image reflects, Allbirds advises users, "By placing this order, you agree to our **Terms of Service** and understand our **Privacy Policy**."  (Dkt. No. 15-5 at 8.)  This advisal

appears immediately below a "Pay Now" button, and nothing about the design of the single-column checkout page deemphasizes the advisal or distracts users' attention away from it. *See Chabolla*, 129 F.4th at 1157. The advisal is written against a white background using a black font and a font size consistent with the rest of the checkout page. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024). Within the advisal, the phrases "Terms of Service" and "Privacy Policy" are capitalized, bolded, and underlined, which communicates the presence of a hyperlink. *Cf. Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481 (2021) (deeming underlining insufficient to provide conspicuous notice of the presence of a hyperlink without anything else "otherwise draw[ing] the user's attention in any way"). The remote possibility that a user might scroll down the page such that the "Pay Now" button is visible but not the advisal is immaterial. (Dkt. No. 17 at 9–10.) *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024) (notice directly below the "Play" button was sufficiently conspicuous). The combination of features identified above supports a fair inference that a reasonably prudent user would have seen Allbirds's advisal flagging its Terms and Conditions.

Second, after receiving conspicuous notice of the Terms and Conditions, Vickers chose to place her order by clicking the "Pay Now" button, which unambiguously manifested her assent to those terms. *See Patrick*, 93 F.4th at 477. Although the advisal does not specifically say that the user agrees to the Terms "by clicking on 'Pay Now,'" the advisal does inform the user that they will agree to the Terms by "placing this order." There is no other apparent way to place the order beyond clicking on the "Pay Now" button, and the proximity between the advisal and the button makes clear that "the linked terms pertain to the action the user is about to take." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017); *see also Berman*, 30 F.4th at 858 (citing *Meyer*, 868 F.3d at 78–80). By clicking the "Pay Now" button, Vickers unambiguously manifested her assent to Allbirds's Terms and Conditions. In doing so, she entered into a valid sign-in wrap agreement to arbitrate that encompasses her claims against Allbirds. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023).

For the foregoing reasons, the motion to compel arbitration is granted.  Accordingly, the case is **STAYED** pending arbitration.  The parties shall file a joint status report every 180 days to update the Court on the arbitration proceedings and shall file a status report within 14 days of the completion of arbitration proceedings.  The parties' first status report is due by **December 4, 2026**.

**IT IS SO ORDERED.**

Dated: May 27, 2026

_____
RITA F. LIN
United States District Judge